J-S26005-21
J-S26006-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: RELINQUISHMENT OF: T.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: A.P., MOTHER | : | No. 556 MDA 2021 |

Appeal from the Decree Entered April 5, 2021
In the Court of Common Pleas of Lackawanna County
Orphans' Court at No: 2020-0049

| | | |
|---|---|---|
| IN RE: RELINQUISHMENT OF: S.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: A.P., MOTHER | : | No. 557 MDA 2021 |

Appeal from the Decree Entered April 5, 2021
In the Court of Common Pleas of Lackawanna County
Orphans' Court at No: 2020-0050

| | | |
|---|---|---|
| IN RE: RELINQUISHMENT OF: E.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: A.P., MOTHER | : | No. 558 MDA 2021 |

Appeal from the Decree Entered April 5, 2021
In the Court of Common Pleas of Lackawanna County
Orphans' Court at No: 2020-0051

J-S26005-21
J-S26006-21

| | | |
|---|---|---|
| IN RE: RELINQUISHEMENT OF: A.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: A.P., MOTHER | : | No. 559 MDA 2021 |

Appeal from the Decree Entered April 5, 2021
In the Court of Common Pleas of Lackawanna County
Orphans' Court at No:  2020-0052

| | | |
|---|---|---|
| IN RE: RELINQUISHMENT OF: M.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: A.P., MOTHER | : | No. 560 MDA 2021 |

Appeal from the Decree Entered April 5, 2021
In the Court of Common Pleas of Lackawanna County
Orphans' Court at No:  2020-0053

| | | |
|---|---|---|
| IN RE: RELINQUISHMENT OF: T.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: M.B. SR., FATHER | : | No. 561 MDA 2021 |

Appeal from the Decree Entered April 5, 2021
In the Court of Common Pleas of Lackawanna County
Orphans' Court at No:  2020-0049

- 2 -

IN RE: RELINQUISHMENT OF: S.B., A : IN THE SUPERIOR COURT
MINOR : OF PENNSYLVANIA
:
:
:
:
:
:
:
:
:
APPEAL OF: M.B., FATHER : No. 562 MDA 2021

Appeal from the Decree Entered April 5, 2021
In the Court of Common Pleas of Lackawanna County
Orphans' Court at No: 2020-0050

IN RE: RELINQUISHMENT OF: E.B., A : IN THE SUPERIOR COURT
MINOR : OF PENNSYLVANIA
:
:
:
:
:
:
:
:
:
APPEAL OF: M.B., FATHER : No. 563 MDA 2021

Appeal from the Decree Entered April 5, 2021
In the Court of Common Pleas of Lackawanna County
Orphans' Court at No: 2020-0051

IN RE: RELINQUISHMENT OF: A.B., A : IN THE SUPERIOR COURT
MINOR : OF PENNSYLVANIA
:
:
:
:
:
:
:
:
:
APPEAL OF: M.B., FATHER : No. 564 MDA 2021

Appeal from the Decree Entered April 5, 2021
In the Court of Common Pleas of Lackawanna County
Orphans' Court at No: 2020-0052

J-S26005-21
J-S26006-21

IN RE: RELINQUISHMENT OF: M.B.,   :   IN THE SUPERIOR COURT
A MINOR                         :       OF PENNSYLVANIA

                                         :
                                         :

APPEAL OF: M.B. SR., FATHER      :       No. 565 MDA 2021

Appeal from the Decree Entered April 5, 2021
In the Court of Common Pleas of Lackawanna County
Orphans' Court at No:  2020-0053

BEFORE:  STABILE, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY STABILE, J.:            **FILED OCTOBER 05, 2021**

A.P. ("Mother") and M.B., Sr. ("Father") (collectively, the "Appellants"), appeal from the decrees entered April 5, 2021, which terminated their parental rights to their children involuntarily.  Following careful review, we vacate and remand for a new hearing.

The record reveals Appellants are the parents of five dependent children, including T.B., a male born in January 2013, S.B., a female born in May 2014, E.B., a female born in November 2015, A.B., a female born in June 2017, and M.B., a male born in May 2018 (collectively, "the Children").  The Lackawanna County Office of Youth and Family Services ("the Agency") filed petitions to terminate Appellants' parental rights to the Children involuntarily on October 30, 2020.  The orphans' court held a hearing on the petitions on November 12, 2020, December 3, 2020, February 11, 2021, and March 4, 2021.[1]

---

[1] The hearing occurred remotely due to the COVID-19 pandemic.

- 4 -

Relevant to this appeal, the Agency caseworker testifying at the hearing, Danielle Taylor, began working at the Agency in June 2020 and only became assigned to the Children's case in approximately August or September 2020. N.T., 11/12/20, at 4, 43, 48-49; N.T., 2/11/21, at 8. As a result, Ms. Taylor had no personal knowledge regarding anything that occurred during much of the Children's dependency, which reportedly began in 2018. N.T., 11/12/20, at 17-20, 49. Her knowledge regarding the early years of the case resulted from her review of the Agency's case files and from conversations with other caseworkers. *Id.* at 48-49. When Ms. Taylor began testifying as to events outside her personal knowledge on the first day of the hearing, November 12, 2020, Mother's counsel objected and argued that the testimony was hearsay. *Id.* at 10. The orphans' court overruled counsel's objection, explaining it had also served as the juvenile court in the Children's dependency proceeding. *Id.* at 11. The court continued:

> THE COURT: . . . . I conducted all the previous hearings, and I am going to take judicial notice of all those previous hearings and make it part of the record.
>
> But as we indicated, also, I think, when you look back at it, we're going to be introducing the entire record, we have to go back and maybe even get the transcripts and make them part of the record of those previous hearings for purposes of an appeal, if the [c]ourt rules in favor of the [termination of parental rights], that we're going to have to get those dates and times and get those transcripts and make it part of the record.
>
> Also, it could be overruled, the objection on hearsay basis, because these records are kept in the ordinary course of business, and Ms. Taylor has reviewed those records and can give testimony regarding her review of the record.

> But, as [the Children's legal counsel and guardian *ad litem*[2]] indicated, most of the stuff she's testifying to has already been found as findings of the fact [*sic*] in the previous hearings, so I'm going to allow the testimony.

*Id.* at 11-12.

Mother's counsel responded to this ruling by making an oral motion *in limine* requesting that the orphans' court exclude any testimony by Ms. Taylor regarding events prior to August 2020. *Id.* at 13. The court denied counsel's motion, and the hearing proceeded. *Id.* at 16 (the court explaining, "We're considering the totality of the record and everything else that's going to be included. So, again, I'm going to deny the motion in limine for the reasons I indicated and we'll go forward."). At the conclusion of testimony on November 12, 2020, the court requested that the paralegal assigned to the case "get a hard copy down to my chambers of the exhibits that are going to be entered, like the file with all the previous court orders and my findings of fact[.]" *Id.* at 68. When counsel for the Agency noted she had requested the transcripts from the juvenile court proceedings as well, the court added, "All right. And they'll be marked. If we do get them by that time, we'll mark them as exhibits and we'll enter them as part of the docket." *Id.* at 68-69.

_____

[2] The orphans' court appointed a single attorney to act as both the Children's legal counsel and guardian *ad litem* during the termination proceedings. The attorney indicated at the hearing he did not believe a conflict existed between the Children's legal interests and best interests that would prevent him from serving in both roles. N.T., 11/12/20, at 13.

Significantly, despite the statements by the orphans' court that it would admit the juvenile court record into evidence, our review of the certified record on appeal does not reveal that this ever occurred. At no point during the four days of testimony did the court or the Agency mark, introduce, or admit the juvenile court record or any portion of its contents as exhibits. Instead, by the second day of the hearing, December 3, 2020, the court and the parties were seemingly operating under the belief that the juvenile court record was already admitted, except for the transcripts. *See* N.T., 12/3/20, at 18-19 (the court agreeing with counsel for Mother that the prior "10 or 12 hearings" were "already admitted into the record[,]" but that "[t]he [A]gency intends to admit all those transcripts as exhibits[.]").[3]

On March 30, 2021, the orphans' court and the parties reconvened, and the court announced its decision to terminate Appellants' rights to the Children involuntarily. N.T., 3/30/21, at 6-7. After announcing this decision, the court excused Appellants and their attorneys, and the remaining parties proceeded to a goal change hearing at the juvenile court docket. *Id.* at 11-17. It appears that only then, after the termination hearing was over and the matter decided, did the court and counsel for the Agency attempt to admit the juvenile court record into evidence. The record reveals the following exchange:

> [Counsel for the Agency]: Also, I just want to make sure that all of the exhibits from the petition, the birth certificates and

_____

[3] Following completion of the Agency's case in chief, counsel for both parties made what they characterized as a demurrer on behalf of their clients, which the orphans' court denied. N.T., 3/4/21, at 3.

the paternity, all of the information that was attached as exhibits are being admitted.

THE COURT: Attached to the petition, yeah, they're admitted.

[Counsel for the Agency]: Okay. Thank you, Your Honor.

COURT REPORTER: Not in this hearing. They're admitted in the other one, correct?

THE COURT: Yes.

***

COURT REPORTER: This is the goal change.

THE COURT: Right. Not to the goal change, but to the [termination of parental rights]. That's what she's referring to.

COURT REPORTER: Okay. Well, what were they, so I know? Did you mention them?

THE COURT: Yeah. It was at the beginning. It was the entire --

[Counsel for the Agency]: The certified record, the birth certificate.

[Legal counsel/guardian *ad litem*]: [Court Appointed Special Advocates] report.

[Counsel for the Agency]: And the --

COURT REPORTER: I wasn't sure if you mentioned that in the beginning but maybe --

THE COURT: Maybe not today, I know I didn't mention it. At the end of the last hearing, we did. All those exhibits will be --

[Counsel for the Agency]: Entered in the petition as well. So the certified record was sent separately. But then the petition has the birth certificate attached and I don't have --

THE COURT: Whatever was attached to the petition has to be admitted into record. [*sic*]

[Legal counsel/guardian *ad litem*]: Yeah. And there was -- and all that stuff would have been referenced also to the [termination of parental rights] hearing, which was held on March 4th. You didn't hear it here.

COURT REPORTER: You didn't admit them there. But you want to admit them all here, is that what's happening?

THE COURT: I think we admitted them at the beginning, when we started the [termination of parental rights] when [counsel for the Agency] --

[Counsel for the Agency]: I just wanted to make sure that I did it.

COURT REPORTER: Well, I need to know what they are, so I want you to be specific about it.

THE COURT: The entire certified record, Janet, with all the previous Court Orders, review Orders and everything else, that was part of the petition.

So, whatever what [*sic*] was attached to the petition for termination of parental rights are all part of the record as exhibits.

LAW CLERK: Janet, I'll find it all in my e-mail and I'll send it to you, just so you have it.

COURT REPORTER: That's it, because I need to list them on what they are and the numbers, so.

[Paralegal]: This is Tricia. On the November TPR date, the certified records were admitted and you took judicial notice of the entire record.

THE COURT: Okay.

(Agency Exhibits from [termination of parental rights] hearings were admitted into evidence.)

- 9 -

*Id.* at 18-21. Despite this exchange, neither the juvenile court record nor the transcripts associated with it appear in the certified record on appeal that this Court received.[4]

On April 5, 2021, the orphans' court entered decrees, which terminated Appellants' parental rights to the Children involuntarily. Both Appellants filed separate notices of appeal for each child on April 30, 2021, along with concise statements of errors complained of on appeal. This Court listed Appellants' appeals consecutively, and we now consolidate them for disposition.

Mother raises the following claims in her brief:

1. Whether the [orphans' c]ourt erred as a matter of law and/or manifestly abused its discretion in denying Mother's [m]otion in [l]imine seeking to exclude any testimony from the current Agency caseworker about any statements contained in the Agency casefile which were outside the scope of the caseworker's personal knowledge?

2. Whether the [orphans' c]ourt erred as a matter of law and/or manifestly abused its discretion in denying Mother's demurrer at the close of the Agency's case-in-chief contending the Agency failed to present competent, non-hearsay evidence to support the termination of Mother's parental rights without affording Mother the opportunity to confront and cross-exam[ine] the witnesses who made those statements?

3. Whether the [orphans' c]ourt erred as a matter of law and/or manifestly abused its discretion in denying Mother's [m]otion for [m]istrial following the Agency's attempt to reopen the evidentiary record and, in so-moving, publishing the unfairly prejudicial evidence sought to be admitted to the [orphans' c]ourt who was sitting as both the trier of fact and law in the instant matter?

_____

[4] To ensure that no exhibits were omitted from the certified record on appeal by mistake, we contacted our Prothonotary's Office. Prothonotary staff then contacted orphans' court staff, who verified that no exhibits were omitted.

4. Whether the [orphans' c]ourt erred as a matter of law and/or manifestly abused its discretion in determining the Agency presented sufficient evidence to satisfy the grounds for termination of Mother's parental rights under Sections 2511(a)(2), 2511(a)(5) and/or 2511(a)(8) of the Adoption Act?

5. Even if this Court determines the Agency presented sufficient evidence to satisfy the grounds for termination of Mother's parental rights under Sections 2511(a)(2), 2511(a)(5) and/or 2511(a)(8) of the Adoption Act, whether the [orphans' c]ourt nevertheless erred as a matter of law and/or manifestly abused its discretion in determining termination of Mother's parental rights is in the best interests of the minor children?

Mother's Brief at 5-6 (suggested answers and underlining omitted).

In addition, Father raises the following claims, which are substantively

identical to Mother's claims:

1. Whether the [orphans' c]ourt erred as a matter of law and/or manifestly abused its discretion in denying Father's [m]otion in [l]imine seeking to exclude any testimony from the current Agency caseworker about any statements contained in the Agency casefile which were outside the scope of the caseworker's personal knowledge?

2. Whether the [orphans' c]ourt erred as a matter of law and/or manifestly abused its discretion in denying Father's demurrer at the close of the Agency's case-in-chief contending the Agency failed to present competent, non-hearsay evidence to support the termination of Father's parental rights without affording Father the opportunity to confront and cross-examine the witnesses who made those statements?

3. Whether the [orphans' c]ourt erred as a matter of law and/or manifestly abused its discretion in denying Father's [m]otion for [m]istrial following the Agency's attempt to reopen the evidentiary record and, in so moving, publishing the unfairly prejudicial evidence sought to be admitted to the [orphans' c]ourt who was sitting as both the trier of fact and law in the instant matter?

- 11 -

4. Whether the [orphans' c]ourt erred as a matter of law and/or manifestly abused its discretion in determining the Agency presented sufficient evidence to satisfy the grounds for termination of Father's parental rights under Sections 2511(a)(2), 2511(a)(5) and/or 2511(a)(8) of the Adoption Act?

5. Even if this Court determines the Agency presented sufficient evidence to satisfy the grounds for termination of Father's parental rights under Sections 2511(a)(2), 2511(a)(5) and/or 2511(a)(8) of the Adoption Act, whether the [orphans' c]ourt nevertheless erred as a matter of law and/or manifestly abused its discretion in determining termination of Father's parental rights is on the best interests of the [m]inor [c]hildren?

Father's Brief at 5-6 (suggested answers omitted).

We focus our attention on the first and second claims in both Appellants' briefs, as they are dispositive of these appeals. Appellants assail the decision of the orphans' court to admit and rely on Ms. Taylor's disputed testimony. Mother's Brief at 10-15; Father's Brief at 10-12. They contend the testimony was hearsay without an exception because Ms. Taylor did not possess personal knowledge regarding much of what she was discussing and merely relayed what she read in the Agency's files, and because the Agency failed to meet the requirements of the "business record" exception to the hearsay rule.[5] *Id.*

---

[5] Our review of the record does not support Father's assertion in his brief that he objected to Ms. Taylor's testimony and joined the motion *in limine* counsel for Mother made to exclude the testimony. *See* Father's Brief at 10. However, even accepting for the sake of argument that Father waived any challenge to Ms. Taylor's testimony by failing to make a timely objection separately from Mother, we would conclude that vacating the termination decrees as to Father is still appropriate. Father preserved a challenge to the sufficiency of the evidence supporting the termination of his parental rights, and, as we detail below, the orphans' court terminated Father's rights based in significant part on juvenile court evidence not properly admitted into the record during the termination hearing.

We consider Appellants' evidentiary challenges mindful of our standard of review, which provides that "the decision of whether to admit or exclude evidence is within the sound discretion of the orphans' court. A reviewing court will not disturb these rulings absent an abuse of discretion. Discretion is abused if, inter alia, the orphans' court overrides or misapplies the law." **In re A.J.R.-H.**, 188 A.3d 1157, 1166-67 (Pa. 2018) (citations omitted); **see also Davis v. Borough of Montrose**, 194 A.3d 597, 606 (Pa. Super 2018) (citing **Turner v. Valley Housing Development Corp.**, 972 A.2d 531, 535 (Pa. Super. 2009), *reargument denied* (June 23, 2009)) ("When reviewing a . . . determination on motions *in limine*, we apply an abuse of discretion standard.").

Our Rules of Evidence define "hearsay" as "a statement that . . . (1) the declarant does not make while testifying at the current trial or hearing; and . . . (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801(c). Hearsay is generally inadmissible. Pa.R.E. 802. At issue is the exception to the hearsay rule found at Rule 803(6), which provides as follows:

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
>
> ***
>
> **(6) Records of a Regularly Conducted Activity.** A record (which includes a memorandum, report, or data compilation in any form) of an act, event or condition if:

(A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;

(B) the record was kept in the course of a regularly conducted activity of a "business", which term includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

Pa.R.E. 803(6).

Notably, the exception memorialized at Rule 803(6) also is found within the Uniform Business Records as Evidence Act, which provides the following:

**(b) General rule.--**A record of an act, condition or event shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the tribunal, the sources of information, method and time of preparation were such as to justify its admission.

**(c) Definition.--**As used in this section **"business"** includes every kind of business, profession, occupation, calling, or operation of institutions whether carried on for profit or not.

42 Pa.C.S.A. § 6108(b)-(c).

The orphans' court discussed Appellants' claims in its opinion, explaining the relevant law and the circumstances surrounding its decision to admit Ms. Taylor's disputed testimony. The court reasoned, in relevant part, that "[t]he Agency's casefiles contain a litany of records kept in the regular course of its

business. This [c]ourt permitted Caseworker Taylor to testify as to her own impressions upon her necessary review of the casefiles after inheriting the same. Thus, the [c]ourt's ruling . . . should be affirmed." Orphans' Court Opinion, 6/1/21, at 10.

We are constrained to conclude the orphans' court committed an abuse of its discretion. Ms. Taylor's disputed testimony was clearly hearsay, as it consisted of out-of-court statements from the Agency's files and from Ms. Taylor's conversations with other caseworkers. It also is apparent that the Agency was offering those statements to prove the truth of the matter they asserted, which related to the background of the case and Appellants' progress toward reunification.

Moreover, the "business record" exception to hearsay rule did not apply under these circumstances. Rule 803(6) permits the admission of a "record," such as a "memorandum, report, or data compilation[.]" Pa.R.E. 803(6). The Uniform Business Records as Evidence Act, similarly, permits the "admission" of a "record." 42 Pa.C.S.A. § 6108(b). Neither authority permits a witness to testify as to the contents of a record that is not present, or being offered for admission, merely because he or she purports to have read that record at an unspecified time in the past. *See* Pa.R.E. 1002-1004 (providing that a party must generally produce an original or duplicate to prove the contents of a document). The premise underlying the "business record" exception is that the statements in a record are reliable despite their hearsay character when the record satisfies certain conditions. ***See Bayview Loan Servicing LLC v.***

***Wicker***, 206 A.3d 474, 483 (Pa. 2019) ("[T]he circumstantial trustworthiness arises from the regularity with which business records are kept and the reliance that businesses place on the accuracy of those records."). Clearly, the testimony of a witness merely relaying his or her interpretation of what a record said lacks the same indicia of reliability.

We also find persuasive Appellants' reliance on ***A.J.R.-H.***, ***supra***. In that case, our Supreme Court held an orphans' court abused its discretion by admitting one hundred and sixty-seven exhibits without presenting testimony to establish that any of them met the requirements of the "business record" exception. ***A.J.R.-H.***, 188 A.3d at 1167-70. The Court explained, in relevant part:

> Without question, the manner in which these exhibits were admitted into evidence in the first instance failed to satisfy the requirements of the business records exception. [The agency] did not present any witness in support of the exhibits' admission, let alone "the custodian or other qualified witness." Instead, all of the exhibits were presented to the court for admission, in bulk, by the county solicitor prior to calling any witnesses to testify. There was also no testimony of record that someone with knowledge created any of the 167 exhibits at or near the time of the event or that they were created in the regular practice of the various agencies from which the documents came. Additionally, none of the documents were certified copies. The only information provided at the time of the exhibits' admission was the county solicitor's assurance, in response to the leading question posed by the orphans' court, that the exhibits were contained in [the agency's] files and "were collected in the ordinary course of business with regard to this case."

***Id.*** at 1167-68 (citations and footnote omitted). As Appellants contend, the Agency in this matter likewise presented no testimony to establish that any of

the documents from which Ms. Taylor was testifying were "business records." Mother's Brief at 12; Father's Brief at 11. The orphans' court simply seems to have assumed that the exception applied, based on its belief that the Agency's files were "kept in the ordinary course of business[.]" N.T., 11/12/20, at 12.

Having concluded the orphans' court abused its discretion by admitting Ms. Taylor's disputed testimony based on the "business record" exception, we consider the two other justifications the court offered on November 12, 2020, for admitting the testimony. First, the court explained it would "take judicial notice of all those previous hearings" about which Ms. Taylor was testifying "and make it part of the record." *Id.* at 11. Second, the court explained that "we're going to be introducing the entire record," and "most of the stuff she's testifying to has already been found as findings of the fact [*sic*] in the previous hearings[.]" *Id.* at 12.

Regarding the assertion that the orphans' court could take judicial notice of the juvenile court proceedings, our Rules of Evidence permit a court to take judicial notice of "an adjudicative fact." Pa.R.E. 201(a). This includes any fact "that is not subject to reasonable dispute because it: (1) is generally known within the [] court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Pa.R.E. 201(b). Contrary to the court's apparent determination here that the contents of the juvenile court record qualified as adjudicative facts, our case law provides a "'court may not ordinarily take judicial notice in one case of the

records of another case, whether in another court or its own, even though the contents of those records may be known to the court.'" ***220 Partnership v. Philadelphia Elec. Co.***, 650 A.2d 1094, 1097 (Pa. Super. 1994) (quoting ***Naffah v. City Deposit Bank***, 160, 13 A.2d 63, 64 (Pa. 1940)). Thus, we conclude the court's assertion that it could take judicial notice was improper and does not overcome or excuse its misapplication of the "business record" exception to the hearsay rule.

As for the assertion that the orphans' court would introduce the juvenile court record and admit it into evidence, our review of the certified record on appeal does not reveal that this ever occurred. At no point during the four days of testimony did the court or the Agency mark, introduce, or admit the juvenile court record or any portion of its contents as exhibits. It appears that the court and the Agency first attempted to admit the juvenile court record on March 30, 2021, after the court already ended the termination hearing, announced it would terminate Appellants' rights, excused Appellants from the proceeding, and completed a goal change hearing at the juvenile court docket. Even then, the juvenile court record did not become part of the certified record on appeal received by this Court. Our law is clear that "[a] trial court may not consider evidence outside of the record in making its determination. Nor may this [C]ourt uphold a trial court's order on the basis of off-the-record facts." ***M.P. v. M.P.***, 54 A.3d 950, 955 (Pa. Super. 2012) (quoting ***Ney v. Ney***, 917 A.2d 863, 866 (Pa. Super. 2007)) (citations and quotation marks omitted).

It is important to recognize that the presence of evidence in the juvenile court record does not excuse an agency from admitting that evidence into the orphans' court record during a termination hearing. As this Court explained in a recent opinion addressing a similar problem, "[t]ermination proceedings often occur simultaneously with dependency proceedings, but these two types of proceedings remain distinct, with their own docket numbers, records, and divisions within the Court of Common Pleas." **In the Interest of S.S.**, 252 A.3d 681, 688 (Pa. Super. 2021). In **S.S.**, we held an orphans' court erred by considering *sua sponte* a psychiatrist's report that had been admitted into the juvenile court record but not the orphans' court record. We reasoned that the absence of the report from the orphans' court record prevented this Court from reviewing it and ensuring it supported the court's termination decision, since the appellant did not appeal any order entered in his child's dependency matter, and we did not have access to the juvenile court record. **Id.**

The same rationale applies to this case. Appellants did not appeal any order entered in the Children's dependency proceedings, neither the orphans' court nor the Agency admitted the juvenile court records into evidence at the termination hearing, and this Court did not receive any portion of the juvenile court record as part of the certified record on appeal. As a result, we cannot review the juvenile court record to confirm it supports Ms. Taylor's disputed testimony or the decision of the orphans' court.

Finally, we cannot conclude that the abuses of discretion by the orphans' court were harmless. "[F]inding harmlessness in a termination [of parental rights] case requires us to conclude that the evidentiary error could not have had any impact upon the orphans' court's decision." **A.J.R.-H.**, 188 A.3d at 1175. It is apparent the court's missteps in this matter had a significant impact on its termination decision. Indeed, the court relied on Ms. Taylor's improperly admitted testimony and the juvenile court record when explaining its decision in its opinion. **See generally** Orphans' Court Opinion, 6/1/21, at 3-21.

We hold, therefore, that the orphans' court committed an abuse of its discretion by admitting Ms. Taylor's disputed testimony. We further hold that the court committed an abuse of its discretion by purporting to take judicial notice of the juvenile court record and by relying on portions of the juvenile court record that it did not properly admit into evidence during the termination proceedings. Because we conclude the court's missteps were not harmless, we vacate the decrees terminating Appellants' rights to the Children involuntarily and remand for a new hearing to be held as soon as possible. **See S.S.**, 252 A.3d at 689. Following the hearing, the orphans' court must enter a new decision granting or denying termination. The court must base

its decision on evidence properly admitted during the termination proceedings.[6]

Decrees vacated. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/05/2021

---

[6] Based on our disposition, we need not consider the remainder of Appellants' arguments, including their argument that the orphans' court erred by failing to grant a mistrial due to the Agency's attempt to present evidence regarding new criminal charges Father incurred after the record was closed.